IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Brenda Bonita Arthur, ) | Civil Action No. 6:11-2185-JMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on February 26, 2009, alleging that she became unable to work on October 31, 2007. The application was denied initially and on reconsideration by the Social Security Administration. On January 26, 2010, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Joel D. Leonard, an impartial vocational expert, appeared on January 26, 2011, considered the case *de novo*, and on February 11, 2011, the ALJ found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 15, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since October 31, 2007, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: residuals of surgery (release) to the wrists and thumbs (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work as defined in 20 C.F.R. 404.1567 with restrictions that require no lifting over ten (10) pounds; no standing, walking or sitting limitations; no more than frequent gross manipulations with the right hand; no more than occasional gross manipulations with the left hand; no climbing of ladders, ropes or scaffolds; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery.
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7.  The claimant was born on August 28, 1966, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 1564).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. § 404.1569).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2007, through the date of this decision (20 C.F.R. § 404.1520(g))

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by

4

substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 41 years old on her alleged disability onset date and 44 years old when the ALJ rendered his decision (Tr. 108). She completed high school and worked in the past as a hand packager, press operator, and hand tool assembler (Tr. 50-51, 138, 143).

In 2003 and 2004, James W. Nichols, D.O., performed left carpal tunnel release surgery and left tenosynovectomy (Tr. 412-29). On June 4, 2004, Dr. Nichols advised the plaintiff that it was best for her not to return to her previous job duties and suggested avoidance of repetitive twisting, pushing, and pulling as well as squeezing activities with her left hand (Tr. 411). In December 2006, Dr. Nichols performed right carpal tunnel release surgery (Tr. 440). Dr. Nichols advised the plaintiff to continue light duty at work on January 5, 2007 (Tr. 438).

On July 6, 2007, Dr. Nichols placed the plaintiff at maximum medical improvement and assigned a ten percent physical impairment with regard to the left hand and a zero percent rating of the right hand (Tr. 433).

The plaintiff returned to Dr. Nichols on October 24, 2007, with complaints of pain and triggering in her right thumb. The plaintiff stated that her symptoms had been increasing for the previous several weeks and she was having increasing difficulty working. Dr. Nichols diagnosed stenosing tenosynovitis of the flexor tendon sheath in the right thumb and provided an injection. He thought surgical correction may be necessary (Tr. 275).

Treatment notes from Edgar DesChamps, III, M.D., dated October 30, 2007, state the plaintiff complained of persistent back and right hip pain (Tr. 242). On examination, the plaintiff was fully oriented with a normal mood and affect. She had no motor or sensory deficits and normal reflexes. Dr. DesChamps assessed low back pain and right hip pain (Tr. 243).

The plaintiff returned to Dr. Nichols on October 31, 2007, complaining that her symptoms had become worse, with recent onset of pain involving the dorsal radial aspect of her forearm. Dr. Nichols advised the plaintiff that her body had not been able to adjust to the repetitive motion at work and that she may want to consider a job change and "medically retiring from the line of work that she is in." Dr. Nichols gave the plaintiff a note to remain out of work and advised her to speak with personnel about pursuing medical retirement (Tr. 274).[2]

---

[2]After the ALJ's unfavorable decision, the plaintiff submitted additional evidence to the Appeals Council, consisting of forms from Dr. Nichols that the plaintiff was disabled indefinitely and should remain out of work (Tr. 451-53). As the plaintiff neither raises any arguments concerning this additional evidence, nor cites to it in support of any of her other arguments, this evidence will not be discussed further. *See Moseley v. Branker,* 550 F.3d 312, 325 n.7 (4th Cir.2008) (stating that as a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived) (citing *Cavallo v. State Enter.,* 100 F.3d 1150, 1152 n.2 (4th Cir.1996)).

CT scans performed on November 5, 2007, showed mild lumbar scoliosis with no evidence of a disc herniation or significant compromise of the central canal and a small sclerotic focus in the right hip most likely representing an incidental bone island (Tr. 251-54).

On December 6, 2007, Dr. Nichols performed surgical release of the plaintiff's right flexor tendon (Tr. 218-19).  On December 18, 2008, the plaintiff was able to flex and extend her right thumb without triggering (Tr. 270).  On January 15, 2008, the plaintiff told Dr. Nichols she was doing well.  She had normal sensation and no triggering with flexion. Dr. Nichols released the plaintiff with regard to her surgery (Tr. 269).

On January 29, 2008, Dr. DesChamps found the plaintiff had full range of motion in all her joints; no edema; normal reflexes, gait, station, sensation, and strength; and an appropriate mental status (Tr. 236).   Dr. DesChamps prescribed anti-depressant (Lexapro) and anti-anxiety (Xanax) medications and advised the plaintiff to follow-up in six weeks (Tr. 236).

On March 20, 2008, the plaintiff reported to Dr. Nichols that she had been having right wrist and thumb pain and occasional triggering in her left thumb.  Dr. Nichols noted that x-rays of the plaintiff's right thumb and wrist showed mild degenerative changes involving the carpometacarpal joint of the thumb.  Dr. Nichols thought the plaintiff might need further surgery on the left thumb (Tr. 268).  Surgery was scheduled in May 2008, but the plaintiff's worker's compensation carrier denied coverage of the procedure (Tr. 267).

When the plaintiff returned to Dr. DesChamps on September 22, 2008, she complained of depression (Tr. 227).  The plaintiff was fully oriented with a normal mood and affect, and she had no motor or sensory deficits and normal reflexes. Dr. DesChamps refilled her Lexapro and Xanax (Tr.228).

On November 3 and December 22, 2008, the plaintiff again was fully oriented with a normal mood and affect (Tr. 222, 225).

On January 16, 2009, Dr. Nichols performed surgical excision of a ganglion cyst and release of the flexor tendon sheath in the plaintiff's left thumb (Tr. 260). When the plaintiff returned to Dr. Nichols on February 20, 2009, she said she still had a little soreness with direct pressure, but she had not had any further triggering and she was doing well. Dr. Nichols released the plaintiff with regard to her surgery (Tr. 262).

In March 2009, Dr. DesChamps completed a form stating that the plaintiff had mild depression and that medication had helped her condition. Dr. DesChamps stated the plaintiff was fully oriented with intact thought process, appropriate thought content, normal mood, adequate attention and concentration, and good memory and that the plaintiff had no work-related limitations due to her mental condition (Tr. 220).

On March 27, 2009, Edward Waller, Ph.D., a state agency psychologist, reviewed the evidence and completed a "Psychiatric Review Technique" form. Applying the special technique described at 20 C.F.R. § 404.1520a, Dr. Waller found the plaintiff had affective disorders resulting in "no" restriction of activities of daily living, difficulties in maintaining social functioning, or episodes of decompensation, and only "mild" difficulties in maintaining concentration, persistence, or pace. Therefore, he found that the plaintiff did not have a "severe" mental impairment (Tr. 280-90).

Dr. DesChamps performed an annual physical examination on April 3, 2009. The plaintiff reported she was doing well with no particular problems or complaints. She noted she had undergone bunion surgery the previous year and had done well (Tr. 339). The plaintiff has also undergone four surgeries on her left hand and two surgeries on her right hand (Tr. 340). Dr. DesChamps stated that the plaintiff was working full-time at Cooper Tools. The plaintiff denied any headaches, sleep disturbances, or joint problems (Tr. 341). Dr. DesChamps found the plaintiff had full range of motion in all joints with no edema. She had a normal back without tenderness or abnormalities. The plaintiff had normal reflexes, gait, station, strength, and sensation. Her memory, fund of knowledge, and interaction

8

seemed appropriate (Tr. 342). Dr. DesChamps concluded the plaintiff was stable and generally doing well (Tr. 344).

On April 27, 2009, Robert Kukla, M.D., a state agency physician, reviewed the evidence and completed a "Physical Residual Functional Capacity Assessment." He found the plaintiff could perform medium work[3] that did not require more than occasional climbing of ladders, ropes or scaffolds; more than frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no more than frequent gross manipulation with both hands (Tr. 295-301).

The plaintiff underwent a cardiac consultation with Vince Vismara, M.D., on April 24, 2009. Dr. Vismara found the plaintiff followed all commands appropriately (Tr. 313). The plaintiff's nuclear stress study suggested mild area of reversible ischemia (Tr 312). The plaintiff subsequently underwent a coronary angiography on April 27, 2009, which showed no angiographic evidence of significant underlying coronary arterial disease (Tr. 302). When the plaintiff followed up with cardiologist Dr. Vismara on May 13, 2009, she reported that she continued to have mild dyspnea with moderate to strenuous activity, which she attributed to deconditioning and weight gain. The plaintiff denied pain in her joints or muscles, weakness, or joint swelling (Tr. 309). The plaintiff had no abnormalities on examination, and Dr. Vismara assessed hypertension, anxiety, and abnormal nuclear stress study and subsequent normal cardiac catheterization. He commented that the plaintiff continued to do "quite well" from a cardiac standpoint and that her blood pressure and pulse rate were well controlled (Tr. 310).

On May 18, 2009, Dr. Nichols stated the plaintiff could lift ten pounds occasionally and five pounds or less frequently and could occasionally manipulate with both hands (Tr. 331).

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

On July 22, 2009, the plaintiff presented to Dr. DesChamps with complaints of painful swelling in her right knee and nodule in her right leg (Tr. 332). Dr. DesChamps assessed a skin infection and right leg nodule and sent her for diagnostic studies (Tr. 333).

In October 2009, Dr. DesChamps again completed a form stating that medication had helped the plaintiff's depression and anxiety; that she was fully oriented with intact thought process, appropriate thought content, normal mood, adequate attention and concentration, and good memory; and that she had no work-related limitations due to her mental condition (Tr. 360).

On November 10, 2009, Samuel Goots, Ph.D., a state agency psychologist, reviewed the evidence and completed a "Psychiatric Review Technique" form. Applying the special technique described at 20 C.F.R. § 404.1520a, Dr. Goots found the plaintiff had affective and anxiety disorders resulting in "no" restriction of activities of daily living, difficulties in maintaining social functioning, or episodes of decompensation, and only "mild" difficulties in maintaining concentration, persistence, or pace. Therefore, he found that the plaintiff did not have a "severe" mental impairment (Tr. 365-75).

The plaintiff underwent a consultative examination with James E. Gee, M.D., on December 23, 2009. The plaintiff reported that she had pain, swelling, and numbness in both hands and wrists and that she had difficulty cooking, styling her hair, and performing prolonged activities with her hands. The plaintiff showed Dr. Gee a note from Dr. Nichols written in November 2007, indicating that the plaintiff was "disabled indefinitely." The plaintiff acknowledged that she had returned to work "off and on" between surgical procedures. The plaintiff indicated she had also undergone lumbar decompression surgery, left eye surgery, and bunion surgery (Tr. 379). The plaintiff reported that she was having a good day and was not having any pain in her wrists and hands. On examination, the plaintiff was able to use her hands and wrists normally as she sorted through papers in her folder. She could perform fine and gross movements without difficulty. The plaintiff had full range of right wrist motion,

except for only very slight limitation of dorsiflexion. She had no thumb triggering, and her neurovascular examination was intact. The plaintiff had no tenderness or Tinel's sign over the right ulnar nerve, and her right grip strength was good. The plaintiff had less motion of her left wrist, although it was functional motion. She had no triggering of her left thumb (Tr. 380). The plaintiff's neurovascular examination of the left hand was intact, and she had good grip strength. There was no opposition weakness or significant atrophy. She had a little tenderness and a questionably positive Tinel's sign. Dr. Gee noted that Dr. Nichols had assessed the plaintiff with a five percent impairment rating of her right hand and a ten percent impairment rating of her left. Dr. Gee stated the plaintiff "definitely has some limitations" although there were few objective signs on examination other than the surgical scars (Tr. 381).

On January 4, 2010, Darla Mullaney, M.D., a state agency physician, reviewed the evidence and completed a "Physical Residual Functional Capacity Assessment." She found the plaintiff could perform light work[4] that did not require more than occasional climbing of ladders, ropes, or scaffolds; more than frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, kneeling, crouching, or crawling; and no more than constant handling with the right hand and occasional handling with the left (Tr. 386-88).

When the plaintiff followed up with Dr. DesChamps on October 5, 2010, for her hypertension, she complained of hip pain. She reported that she had been tolerating her medications well, and she denied any additional symptoms. The plaintiff said she had been doing a lot of walking and standing and noted her history of scoliosis (Tr. 398). Dr. DesChamps found no musculoskeletal or neurological abnormalities (Tr. 400-01). The

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour day and sittign intermittently during the remaining tow hours. *See* Social Security Ruling (SSR) 83-10, 1983 WL 31251.

plaintiff did not want to undergo x-rays and decided to pursue conservative therapy. Dr. DesChamps prescribed medications, provided instructions for an exercise program, and advised no heavy lifting (Tr. 401).

In her function report, the plaintiff reported that she passed her time taking medications, running errands, and visiting her mother (Tr. 163). She indicated that she was no longer able to continuously use her hands, wrists, and arms (Tr. 164). The plaintiff noted she took care of her own needs, including cooking and housework when she felt up to it (Tr. 164-66).

At the January 2011 hearing, the plaintiff testified that she stopped working on October 31, 2007, because of problems with her hands and wrists (Tr. 34). She stated that she also had high blood pressure, insomnia, and arthritis in her hip (Tr. 37-38). The plaintiff reported that her medications caused dizziness, drowsiness, and attention problems. She said she could lift and carry ten pounds occasionally and five pounds or less frequently (Tr. 40, 46).

The ALJ asked the vocational expert to assume a hypothetical individual of the plaintiff's age, education, and work experience who had no limitation on her ability to sit, stand, and walk, but was limited to lifting and carrying no more than ten pounds, no more than frequent gross manipulation with the right upper extremity; no more than occasional gross manipulation with the left upper extremity; and avoidance of hazards such as unprotected heights (Tr. 52). The vocational expert testified that such a person could perform the jobs of seating usher, bus monitor, and flagger (Tr. 53- 54).

## ANALYSIS

The plaintiff was 41 years old on her alleged disability onset date and was 44 years old as of the date of the ALJ's decision. The ALJ found that she had the following severe impairments: residuals of surgical release to the wrists and thumbs. He further determined that the plaintiff had the residual functional capacity ("RFC") to perform work that

did not require lifting over ten pounds, more than frequent gross manipulations with the right hand, more than occasional gross manipulations with the left hand, and climbing ladders, ropes, or scaffolds, and that she should avoid hazards such as unprotected heights, vibration, and dangerous machinery. The ALJ determined the plaintiff could not perform her past relevant work but could perform jobs that exist in significant numbers in the national economy. The plaintiff argues that the ALJ erred by (1) failing to consider the limiting effects of her right hand pain, back and hip pain, and her depression and anxiety in evaluating her RFC; (2) failing to properly evaluate her credibility; (3) failing to identify her physical exertion requirements as limited to sedentary work; and (4) failing to consider the vocational expert's testimony that she would not be employable if restricted to sedentary work.

### Residual Functional Capacity

The plaintiff argues that the ALJ failed to consider the limiting effects of all of her impairments in determining her RFC. Specifically, the plaintiff argues that the ALJ failed to consider the limiting effects of her right hand pain, back and hip pain, and her depression and anxiety.

With respect to the plaintiff's alleged mental impairment, substantial evidence supports the ALJ's conclusion that it did not "cause more than minimal limitation" in the plaintiff's ability to perform basic mental work activities, and was, therefore, not severe (Tr. 147). In evaluating whether a claimant has a "severe" mental impairment, an ALJ must rate the functional limitations resulting from a claimant's mental impairments in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(b), (c), (d). In rating limitations in the first three areas (activities of daily living; social functioning; concentration, persistence, or pace), the ALJ must use a five-point scale: none, mild, moderate, marked, and extreme. *See id.* § 404.1520a(c)(4). In rating the fourth area (episodes of decompensation), the ALJ must use the following four-point scale: none, one or two, three, four or more. *See id.* Agency regulations provide that, if a claimant's limitations in the first three areas are rated as "none"

13

or "mild" and the claimant's limitations in the fourth area are rated as "none," then the claimant's mental impairment will generally be found to not be severe. *See id.* § 404.1520a(d)(1).

In the present case, the ALJ complied with agency regulations by rating the plaintiff's functioning in each of the four areas. The ALJ determined that the plaintiff's depression and anxiety resulted in no limitations in activities of daily living and social functioning, no episodes of decompensation, and mild limitation in concentration, persistence, or pace. Accordingly, he found that the plaintiff's mental impairment was not severe (Tr. 14).

Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using the telephone and directories, and using the post office. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1); *see also* 20 C.F.R. § 404.1520a(c)(3) (referring to Listing 12.00C). A claimant's activities are assessed in terms of independence, appropriateness, effectiveness, and sustainability. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). In the present case, the ALJ reasonably found that the plaintiff's mental impairment did not result in any limitations in activities of daily living (Tr. 14). The record shows that the plaintiff engaged in a wide array of activities, including caring for herself and her home on her own, preparing meals, running errands, going to the doctor, shopping, and watching television (Tr. 163-67).

"Social functioning" refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(2). It includes the ability to get along with family members, friends, neighbors, grocery clerks, landlords, or bus drivers. *See id.* The ALJ reasonably found that the plaintiff did not have any limitations in social functioning (Tr. 14). This finding is supported by evidence that the plaintiff regularly visited her mother, went grocery shopping, and attended some church services (Tr. 166-67).

14

"Concentration, persistence, or pace" refers to the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(3). The ALJ reasonably found that the plaintiff had only mild limitations in concentration, persistence, or pace (Tr. 14). This finding is consistent with evidence the plaintiff displayed adequate attention and concentration with Dr. DesChamps and followed all commands appropriately during her examination with Dr. Vismara on April 24, 2009 (Tr. 220, 313, 360). The ALJ's finding is further supported by evidence that the plaintiff passed her time watching television and could handle her bank accounts and pay her bills (Tr. 166-67).

"Episodes of decompensation" are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). In order to establish repeated episodes of decompensation, each of extended duration, the claimant generally must show three episodes of decompensation within one year – or an average of once every four months – each lasting for at least two weeks. *See id.* The ALJ reasonably found that the plaintiff did not experience any episodes of decompensation during the relevant time period (Tr. 14).

The ALJ's finding that the plaintiff did not have a "severe" mental impairment is consistent with Dr. DesChamps' observation that the plaintiff's depression responded to medication and his opinion (as a treating physician) that the plaintiff did not exhibit any work-related limitations in functioning due to depression (Tr. 220, 360). The ALJ gave this opinion controlling weight (Tr. 14). *See* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight."). The ALJ's finding is further supported by the opinions of State agency

15

psychologists Drs. Waller and Goots, who reviewed the record and opined that the plaintiff did not have a severe mental impairment (Tr. 290, 375; *see* Tr. 14). *See* 20 C.F.R. §404.1527(e)(2)(i) (recognizing that State agency medical consultants "are highly qualified physicians … who are also experts in Social Security disability evaluation").

The plaintiff also maintains that the ALJ did not adequately address her back and hip pain when he found these to be non-severe (pl. brief 4-6). However, as argued by the Commissioner, in cases that proceed beyond the second step of the sequential evaluation, the articulation of which impairments are severe is of less importance, because ALJ's must consider the effects of both severe and non-severe impairments when determining RFC. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity.").

The ALJ explicitly discussed the plaintiff's comprehensive treatment history in the decision and concluded that the plaintiff's right hip and low back pain were only slight abnormalities having such minimal effect that they would not be expected to interfere with the ability to work (Tr. 13). The record shows that the plaintiff complained of low back pain and right hip pain to Dr. DesChamps on October 30, 2007, but had no motor or sensory deficits and normal reflexes (Tr. 243). CT scans performed a few days later showed only mild lumbar scoliosis and a small scerotic focus in the right hip, most likely representing an incidental bone island (Tr. 251-54). When the plaintiff returned to Dr. DesChamps on January 29, 2008, she had no complaints of back or hip pain, and Dr. DesChamps found she had full range of joint motion, no edema, and normal reflexes, gait, station, sensation, and strength (Tr. 236). During a regular physical examination with Dr. DesChamps on April 3, 2009, the plaintiff reported that she was doing well and had no particular problems or complaints. She had a normal back without tenderness or abnormalities, and her reflexes, gait, station, strength, and sensation were within normal limits (Tr. 342). Later that month, during her cardiac consultation, the plaintiff denied pain in her joints or muscles, weakness, or joint

swelling (Tr. 309).  The plaintiff did not report having back or hip issues to Dr. Gee during the consultative examination in December 2009 (Tr. 380).

On October 5, 2010, the plaintiff complained to Dr. DesChamps of left hip pain. The plaintiff stated that she had been doing a lot of walking and standing (Tr. 398).  Dr. DesChamps did not find any musculoskeletal or neurological abnormalities (Tr. 400-01).  The plaintiff did not want to undergo x-rays and decided to pursue conservative treatment consisting of pain medications and exercises.  Dr. DesChamps recommended "no heavy lifting" and prescribed pain medication (Tr. 401).

As argued by the Commissioner, the evidence simply fails to show that the plaintiff's back and hip pain significantly limited her physical ability to do basic work activities. Indeed, with the exception of Dr. DesChamps' recommendation in October 2010 to avoid heavy lifting, no medical source noted restrictions or limitations because of the plaintiff's alleged back and hip pain.  The ALJ's RFC assessment limited the plaintiff to lifting no more than ten pounds.  To the extent the plaintiff's low back and hip pain should have been found severe, the plaintiff has failed to show what, if any, additional work restrictions were necessary to capture the effects of her low back and hip pain.

Substantial evidence supports the ALJ's finding that the plaintiff had the RFC to perform work that did not require lifting over ten pounds, more than frequent gross manipulations with the right hand, more than occasional gross manipulations with the left hand, and climbing ladders, ropes, or scaffolds, and that the plaintiff should avoid hazards such as unprotected heights, vibration, and dangerous machinery (Tr. 15).  The plaintiff underwent several surgeries in her upper extremities and by October 31, 2007, Dr. Nichols advised the plaintiff to consider changing jobs (Tr. 274).  She underwent two more surgical procedures after this: surgical release of her right flexor tendon in December 2007 and surgical excision of a ganglion cyst in January 2009 (Tr. 218-19, 260).  Dr. Nichols released the plaintiff with regard to her surgery in February 20, 2009, and on May 18, 2009, he opined that she could occasionally lift ten pounds and frequently lift five pounds or less and could occasionally manipulate with both of her hands (Tr. 331).  The ALJ accorded appropriate

17

weight to Dr. Nichols' conclusion and essentially incorporated it into the plaintiff's RFC, finding that she could perform no more than frequent gross manipulations with the right hand and no more than occasional gross manipulation with the left hand (Tr. 15). The ALJ expressly noted that Dr. Nichols did not restrict the plaintiff's ability to sit, stand, and walk (Tr. 15).

The plaintiff claims that the ALJ did not consider her right-hand pain (pl. brief 5). As noted above, the ALJ specifically found the plaintiff was restricted to lifting no more than ten pounds and could not perform more than frequent gross manipulations with her right hand (Tr. 15). Substantial evidence supports this limitation. As noted by the ALJ , Dr. Gee found that the plaintiff was able to use her hands and wrists normally as she sorted through papers in her folder and could perform fine and gross movements without difficulty (Tr. 17; *see* Tr. 380). Dr. Gee also found that the plaintiff had full range of right wrist motion except for only very slight limitation of dorsiflexion, no tenderness or Tinel's sign over the right ulnar nerve, and good right-hand grip strength (Tr. 380). The assessment of Dr. Mullaney, a State agency physician, who reviewed the plaintiff's medical record after Dr. Gee's December 2009 examination, also supports the ALJ's assessment of the plaintiff's RFC. Dr. Mullaney found that the plaintiff was limited to no more than constant handling with her right hand and no more than occasional handling with her left hand (Tr. 388).

Furthermore, as argued by the Commissioner, in response to the ALJ's hypothetical question, the vocational expert identified the usher job (*Dictionary of Occupational Titles* ("*DOT*") 344.677-014), which does not require more than occasional reaching, handling, and fingering, and the school bus monitor job (DOT 372.667-042), which does not require any reaching, handling, or fingering at all (Tr. 53-54).

Based upon the foregoing, this allegation of error is without merit.

**Credibility**

The plaintiff next argues that the ALJ failed to properly evaluate her credibility (pl. brief 5-6). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

18

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .  It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).  Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4.  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)     the individual's daily activities;

(2)     the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)     factors that precipitate and aggravate the symptoms;

(4)     the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)     treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)     any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)     any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The plaintiff argues that the ALJ erred in his RFC assessment because he did not include her subjective reports of difficulty standing, walking, and using her hands (pl. brief 5). However, the ALJ specifically noted the plaintiff's subjective complaints regarding her arms, back, and hips and found that "her statements concerning the intensity, duration, and limiting effects of [her] impairments [were] not entirely credible" (Tr. 16). The ALJ properly based this determination, in part, on the objective medical evidence, discussed above, which failed to substantiate limitations of the degree alleged (Tr. 12-16). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id.* at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). *See Johnson*, 434 F.3d at 658; 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

Here, the absence of objective medical evidence supporting the plaintiff's statements about her limitations was only one factor considered by the ALJ in assessing the plaintiff's credibility. The ALJ also noted that the plaintiff described daily activities "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" (Tr. 16). He noted the plaintiff lived alone and did not report any particular help in maintaining her residence. She prepared meals, drove, paid bills, and took care of her

21

personal needs.  Moreover, the record reflected that the plaintiff worked after the alleged onset date.  While this work activity did not constitute disqualifying substantial gainful activity, the ALJ felt that it suggested her impairments would not currently prevent work.  Furthermore, the ALJ noted that the plaintiff had surgery for carpal tunnel on her right hand, which would normally weigh in her favor suggesting that the symptoms were genuine.  However, the ALJ found that this was offset by the fact that the surgery was generally successful in relieving her symptoms (Tr. 16).  Under the substantial evidence standard of review, the question is whether the evidence supported the ALJ's actual finding, regardless of whether the evidence might have also supported a different finding. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The record in this case is sufficient to support the ALJ's finding that the plaintiff was not completely credible.  Accordingly, this allegation of error is without merit.

### *Vocational Expert*

The plaintiff further argues that the ALJ erred in failing to identify her physical exertion requirements as limited to sedentary work and in failing to consider the vocational expert's testimony that she would not be employable if restricted to sedentary work.  As set forth above, the ALJ found that the plaintiff had the RFC to perform work that required no lifting over ten pounds; no standing, walking or sitting limitations; no more than frequent gross manipulations with the right hand; no more than occasional gross manipulations with the left hand; no climbing of ladders, ropes or scaffolds; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery (Tr. 18).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §

404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 404.1567(b).

Here, while the plaintiff was limited to lifting no more than ten pounds, which fits within the limits of strength activities defining the sedentary level of work, the jobs identified by the vocational expert were classified as light work by the DOT (Tr. 53-54). The ALJ specifically found as follows in his decision:

> The vocational expert's testimony clarified that the jobs cited were classified as light rather than sedentary, because they required more than the sedentary restriction of only two hours standing and/or walking in an eight hour workday. He further noted that the jobs cited did not require lifting or carrying over ten (10 pounds).

(Tr. 19). The vocational expert specifically testified that while the jobs he identified were classified as "light work" by the *DOT* because of their standing and walking requirements, they met the maximum lifting limitation of ten pounds in the plaintiff's RFC (Tr. 18-19, 53-55).

The plaintiff further alleges the ALJ should have accepted certain testimony of the vocational expert in which he testified, upon questioning by the plaintiff's attorney, that if the plaintiff was limited to standing and walking less than two out of eight hours a day, she would not be able to perform the occupations identified by the vocational expert (Tr. 58-59). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, . . . , and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). Here, the ALJ's first hypothetical question accurately described the plaintiff's limitations as found credible by the ALJ, and he properly replied on the vocational expert's response to that question (Tr. 52-54).

This court finds that the Commissioner has met the burden of coming forward with evidence that the plaintiff can perform alternative work and that such work exists in

significant numbers in the national economy.  Accordingly, this allegation of error is without merit.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is supported by substantial evidence and free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

September 13, 2012
Greenville, South Carolina